## UNITED STATES FIDELITY & GUARANTY CO. v. ROSS. (No. 8348.)

(Court of Civil Appeals of Texas. Dallas. March 27, 1920. Rehearing Denied May 8, 1920.)

**Master and servant ⟬405(4)—Evidence held to support jury finding that hernia did not exist before injury.**

In an action to set aside an award under the Workmen's Compensation Law, evidence *held* sufficient to support a jury finding that the hernia for which compensation was granted did not exist in any degree prior to the injury, though it was undisputed that the employé had another hernia prior to such injury.

Appeal from District Court, Dallas County; Marshall Thomas, Special Judge.

Action by the United States Fidelity & Guaranty Company against W. T. Ross to set aside an award of compensation for injuries under the Employers' Liability Act. From a judgment for defendant, plaintiff appeals. Affirmed.

Seay, Seay, Malone & Lipscomb, of Dallas, and Hunt & Teagle, of Houston, for appellant. Chas. F. Clint and D. B. Eades, both of Dallas, for appellee.

TALBOT, J. The appellee, Ross, was an employé of the Texas Portland Cement Company at Eagle Ford, Tex., in the capacity of a carpenter, and on or about September 21, 1917, while in the discharge of his duties, sustained an injury which he claims resulted in and produced a hernia. On and prior to the date mentioned the Texas Portland Cement Company was a subscriber to the Employers' Liability Act of the state of Texas (Acts 1913, c. 176 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz]), and on that date carried a policy of insurance with the appellant of the kind required by said act. Appellee's claim for the injury alleged to have been suffered by him was properly presented to the Industrial Accident Board and compensation awarded him. Appellant, being dissatisfied and unwilling to abide by the award, brought this suit to set it aside. The paragraph of appellant's petition which practically forms the issue between the parties is as follows:

"That on or about said last-named date the defendant, W. T. Ross, claims and alleges to have sustained an injury while engaged in the course of his employment by the Texas Portland Cement Company, and while covered by said policy of insurance, which said alleged injury he alleges produced a hernia, and that the said hernia appeared suddenly and immediately following the injury, and that the same was accompanied by pain, and that the hernia did not exist in any degree prior to the infliction of said injury, all of which is denied by the plaintiff, and it specially pleads that the defendant was suffering with hernia prior to the time of said alleged injury, and that said hernia did exist in a degree prior to the receipt of said injury, and that the same was not accompanied by pain immediately, and that said hernia did not suddenly and immediately follow said injury."

The third paragraph of the appellee's answer, after setting forth that the appellant was duly incorporated, wrote liability insurance, and had a permit to do business in the state of Texas, and that the Texas Portland Cement Company, by whom appellee, at the time of his injuries, was employed, was a subscriber to the Employers' Liability Act and carried a policy of insurance with appellant of the kind required by said act, contains the following allegations:

"That on or about September 21, 1917, the defendant was an employé of the said Texas Portland Cement Company at Eagle Ford, Tex., in the capacity of carpenter, and, while in the course of said employment and in the discharge of his duties, said defendant sustained an injury which resulted in and produced hernia; that said hernia appeared suddenly and immediately following said injury, and that said hernia did not exist in any degree prior to the injury aforesaid, and that said injury was accompanied by pain and suffering and which caused dizziness and nausea."

The case was submitted to the jury on certain special issues and upon the findings made judgment was rendered in favor of the appellee, and, appellant's motion for a rehearing being overruled, it appealed.

The jury found that the appellee, in the course of his employment and on or about September 21, 1917, sustained an injury resulting in hernia; that said hernia appeared suddenly and immediately following the injury; that said hernia did not exist in any degree prior to the injury; and that the injury was accompanied by pain.

The single assignment of error is to the effect that the finding of the jury that the

hernia complained of did not exist in any degree prior to the injury for which compensation is claimed is contrary to the law and evidence and is unsupported by any evidence in the case. In connection with the assignment a full statement of the testimony is made, and the sole question to be decided is whether or not it is sufficient, in view of article 5246—23, Vernon's Sayles' Stat. Supp. 1918, our "Workmen's Compensation Law," to justify the finding attacked. The appellee testified, in substance, that in the year 1910, while working on a school building, he sustained an injury which resulted in a hernia on his right side; that thereafter, in the year 1913, and as a result of said hernia, he began wearing a truss, and was wearing the same at the time he received the injury of which complaint is made in this suit; that there was a new opening within about one inch of the old opening. He said:

"I was using a drill to make a hole in a piece of hard wood with an ordinary brace. The table was up from the floor, and I was in an awkward position, and couldn't get my back to the column, and so I had to stand there with that brace against my lower bowels and put the pressure of the head of the brace against my stomach and shove. Just about the time I finished boring the hole, it felt like something had torn loose or broke or snapped in my bowels. It was painful and made me sick at my stomach. I was about 50 or 75 yards from the carpenter shop, and I took my tools and went to the shop and laid down on a bench. About that time Mr. Green, my helper, came along, and he and I worked together to relieve my pain. He rubbed my stomach and tried to help me got out of misery, but couldn't do it, and about that time my superintendent, Mr. Leonard, came along, and he sent me down to the barn, got a buggy and started me to the doctor's office."

He further said that the doctor, who was Dr. Sappington, put him on the operating table, but could not do anything for him, and called up Dr. S. Webb and made a date to perform an operation on him at the hospital in Dallas; that the first trouble or hernia never gave him any pain at all, but that the hernia for which he was suing made him very sick at the stomach and the pain caused by it "was like as if I had had a knife stuck in me"; that Dr. Sappington told him that if he did not have the operation performed at once, he would most likely die from blood poisoning; that Dr. Sappington called his trouble hernia, but that he had always called it rupture; that the first rupture occurred in 1910 while he was framing a roof for a school building; that he was raising the head rafter, and the wind blew him down, and the rafter fell across his stomach and caused the hernia; that this old hernia was not giving him a particle of trouble when he received the new hernia, except the inconvenience of wearing a truss; that at the time the new injury or hernia occurred the truss had not slipped off; that when the new injury occurred it hurt him so bad that he went to the carpenter's shop.

Dr. Sappington testified, among other things, that in September, 1917, he was connected with the Texas Portland Cement Company as its resident physician and surgeon; that he recalled the accident to the appellee Ross on September 21, 1917. That appellee told him he had been injured and was having some pain; that he examined appellee and found he was in pain; that he also discovered that appellee had suffered a hernia which he could not reduce, and that he advised an operation immediately; that there were two openings, two separate and distinct openings, and that in reality there were two hernias; that the old hernia was giving no trouble, because the gut was loose in there and would slip back and forth; that "a rupture or a hernia is the protrusion of the loop or kink or piece or particle of tissue through the abdominal opening"; that when appellee arrived at his office he found two protrusions; that he found an old hernia and then just a little above, "say about half an inch," he found another hernia, a new one; that he knew one of them was a hernia, but did not know what the other was, "and none of us knew until we opened it and saw it" and then they found that both of them were hernias; that there was a hernia prior to the time appellee got hurt the last time; that the operation was performed for the new nodule; and that the old hernia did not contribute to the new hernia's existence. Dr. Sappington further said that he could not say that appellee was not more susceptible to some trouble down there from the pre-existing hernia because he did have the old hernia, but that it would be very hard to say that he was weaker in that place than a normal person; that a man who has hernia is not as good as a man that has not got one, but that he could say with a reasonable degree of accuracy that the present hernia, "the thing for which we operated," did not exist before the injury, because, if it had, with this tissue down in there long enough, gangrene would have set up, because the blood supply was cut off; that from this he could say that this new hernia had not existed very long when he saw appellee; that about 97 per cent. of hernias "come without violence and 3 per cent. of them come from traumatism."

Dr. Webb testified, among other things, as follows:

"I am engaged in the general practice of medicine as well as surgery. I am not and have not been connected with the United States Fidelity & Guaranty Company in any way. I am not and have not been connected with the Trinity Portland Cement Company. I know the defendant, W. T. Ross. I performed an operation on Mr. Ross, together with Dr. Sappington. I did not get a history of the case. He had a knot or a rupture there, and I just took

him to the operating room and put him under a general anesthetic and opened him up and found two hernias there, or a rupture of the big sack with a lot of adhesions, and we found a little opening. I found two openings in this hernia with a small amount of omentum. That was all on the inside of the abdominal cavity. The big sack was old, and there was a lot of adhesions around it. The smaller sack was very small, with a little piece of omentum; that is, fat, that comes from the intestines. That was inside of that sack, and that was what caused his pain. There was just one big sack with a little small opening; one big sack with one small opening in it. The sack is a part of the lining of the abdominal cavity that goes down into the opening. I would call what I found two distinct sacks. I don't know whether to call it two separate and distinct hernias or not. It was just one hernia. The bigger sack was very thick and adhered; the smaller sack was not adhered. It is impossible for me to say whether that existed prior to the present injury or not, or at the time, or anything about it. I couldn't say, and I don't believe anybody else could say. There was one hernia with two sacks or two openings. A hernia did in fact exist there prior to the present injury. I make a specialty of surgery. I guess I have performed about 150 or 200 operations on men for hernia. I do not think an injury produces a hernia at all. I believe it is a congenital condition. In abnormal conditions and under abnormal circumstances a hernia will be produced there. I have seen one or two cases where a man's side would be torn and he had a big hole torn there which caused a hernia. That was where the hernia was caused by external violence. I think it is possible that a hernia can be produced by an injury in this way; if he has got a hernia there, the injury will make it larger, and it is apt to do so. But, in my opinion, the injury itself does not primarily produce the hernia at the start. It has got to exist before the injury will effect in one way or the other."

On cross-examination this witness said:

"There were two openings there, and a protrusion in each. One of them had many adhesions around it, indicating that it was an old hernia. That one was in the big sack. It was in the inguinal canal right here (indicating). As well as I remember, the one he complained of when I saw him, or the new one, was right above it; I should say about a quarter of an inch. A hernia is a protrusion of the intestines, or some part of the intestines, or the membrane around them, through some opening. If you had two openings and two protrusions, you would have but one sack. You could call it two distinct hernias or a hernia. That is what I said just now. He did have two openings there. Sometimes we find two openings coming through the same ring. But in this case there were two separate and distinct sacks. I was not called upon and did not take particular notice or observe the particular conditions or the history of the case, or whether this was a new or an old condition. I just remedied everything that I thought proper. This small opening had the indication of being a new one through which this omentum protruded, and of being the one that was causing him pain. I think that is the reason he came to me on account of the pain he was suffering. In my opinion a hernia can be caused by a direct injury, but no other kind of injury. If a person had a heavy weight falling down on him, or got in some peculiar position and a hernia resulted immediately with pain, I would say that that could be expected, and that would produce a hernia, but also that the man had a congenital weakness there, and the weight or whatever it was caused an indirect pressure to be so great that it pushed it through the openings. A lick would not be the cause of the hernia. If he had been normal, it would not have caused a hernia. A normal man would not have that hernia, except he got a direct blow, in my opinion. I cannot tell whether he would have it without the lick or not. The fact that he had a hernia or an opening would make the conditions at that point, say an inch and a half or three-quarters of an inch from that place, more susceptible to protrusion or a rupture than if he did not have the old injury. I understand that the defendant, Mr. Ross, has testified that he was boring a hole in a piece of wood or post; that he had the brace or bit against his stomach and pressing down hard enough to force the bit through the wood. If he did not have a hernia prior to that time, the work he was then engaged in would not produce the hernia for which I operated on him. My idea is that if he was not predisposed to hernia that he could not acquire it except by a very violent blow. There could be pressure enough put on that place to produce the nodule that I found there. The fact that the lower protrusion was already there would have a tendency to contribute to or cause the new one."

Notwithstanding the provision of our statute declaring that in all claims for hernia resulting from injury sustained in the course of employment it must be definitely proven to the satisfaction of the Industrial Accident Board that the hernia did not exist in any degree prior to the injury for which compensation is claimed, we are of opinion we would not be warranted in disturbing the verdict of the jury and judgment of the court on the ground that they are not supported by the evidence. The only finding of the jury attacked as being unsupported by the evidence is the one to the effect that the hernia complained of in this action did not exist in any degree prior to the injury charged to have resulted therein, and our conclusion is that the evidence adduced made this an issue of fact for the determination of the jury. The evidence unquestionably shows that the appellee had suffered a hernia in 1910, long prior to the one for which he sues, but if the hernia sustained on September 21, 1917, was not attributable to the pre-existing hernia, and did not exist in any degree prior to the injury producing it, a recovery could be had therefor. While the evidence is doubtless conflicting, it is amply sufficient, we think, to justify the finding that the appellee, in the course of his employment, sustained a

hernia on the 21st day of September, 1917, which was entirely separate and distinct from the one suffered in 1910, not at all attributable thereto, and which did not exist in any degree prior to the injury for which compensation is claimed in this suit. The testimony of the appellee is that the "old hernia was not giving him a particle of trouble when he received the new hernia, except the inconvenience of wearing a truss," and Dr. Sappington testified that appellee had suffered two separate and distinct hernias, an old and a new one; that there were two separate and distinct openings and in reality two hernias; "that he found an old hernia and then just a little above, say about half an inch, he found another hernia, a new one"; that the operation was performed for the new nodule; and that the old hernia was well and did not contribute to the new hernia's existence. Dr. Sappington further testified that about 97 per cent. of hernias come without violence, and about 3 per cent. of them are the result of violence or traumatism. Dr. Webb's testimony differs in some material particulars from that of Dr. Sappington, but he testified in one place that in operating upon the appellee he found two hernias. At another place he said:

"I would call what I found two distinct sacks. I don't know whether to call it two separate and distinct hernias or not. It was just one hernia. * * * There was one hernia with two sacks or two openings."

He further said, however, that—

"Hernia did in fact exist prior to the present injury; that a hernia is a protrusion of the intestines or some part of the intestines or the membrane around them through some opening. If you had two openings and two protrusions, you would have but one sack. You could call it two distinct hernias or a hernia."

This witness further testified that in his opinion "a hernia can be caused by a direct injury, but no other kind of injury," but further says that, "if a person had a heavy weight falling down on him, or got in some peculiar position and a hernia resulted immediately with pain, I would say that could be expected and that would produce a hernia." Dr. Webb further testified, in effect, however, that if the appellee had not had a hernia prior to the time he claims to have sustained the new hernia, the work he was then engaged in would not have produced the hernia for which he seeks to recover.

In this state of the testimony we do not believe it can fairly be said that the issue of whether the hernia in question did or did not exist in any degree prior to the injury for which appellee claims compensation was one of law, and not of fact. The trial court regarded it as one of fact, and submitted the issue to the jury. The jury's finding upon it

is favorable to appellee, and, there being substantial evidence to support such finding, the judgment is affirmed.